UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PORTER PIZZA BOX OF FLORIDA, INC., a Florida Corporation, f/k/a STAR PIZZA BOX<br><br>Plaintiff,<br><br>v.<br><br>PRATT CORRUGATED HOLDINGS, INC., a Delaware corporation,<br><br>Defendant. | CASE NO: _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff, Porter Pizza Box of Florida, Inc. f/k/a Star Pizza Box, who by and through counsel files this complaint for damages showing the Court as follows:

**PARTIES**

1.

Plaintiff, Porter Pizza Box of Florida ("Porter Pizza") is a Florida company, formerly known as Star Pizza Box, and is a "resident" of the state of Florida.

–1–

2.

Defendant, Pratt Corrugated Holdings, Inc. ("Pratt") is a Delaware corporation and resident, registered to do business in Georgia. Pratt may be served through its Registered Agent, CSC of Cobb County, Inc., 192 Anderson Street SE, Suite 125, Marietta, Georgia, 30060.

### JURISDICTION AND VENUE

3.

This Court has subject matter jurisdiction over this case because there is complete diversity among the parties and the matter in controversy exceeds $75,000. This Court has personal jurisdiction over Pratt because it transacts business in the State of Georgia and has breached a contract containing a Georgia venue provision. Pratt consented to jurisdiction and venue in Georgia in Section 10 of that certain Master Supply and Purchase Agreement dated October 18, 2016 ("Purchase Agreement"). Venue is also proper in this Court because certain events giving rise to the Plaintiff's cause of action took place in this judicial district.

4.

The Purchase Agreement expressly requires application of Georgia law.

## STATEMENT OF FACTS

5.

Porter Pizza was in the business of printing pizza boxes.

6.

Pratt is in the business of manufacturing and selling corrugated products.

7.

On February 1, 2012, Pratt and Porter Pizza—then known as Star Pizza Box ("Star Pizza")—entered into a Master Supply and Purchase Agreement (the "2012 Agreement"). Under that contract, Star Pizza agreed to buy, and Pratt agreed to sell, corrugated pizza boxes.

8.

The 2012 Agreement set purchasing volume requirements and pricing based on those volumes.

9.

The 2012 Agreement provided for a monthly "Price Adjustment" based upon industry pricing variations.

10.

Depending on whether industry prices increased or decreased by certain

amounts, the purchase price under the 2012 Agreement was supposed to increase or decrease monthly under a set formula in the agreement.

11.

In 2016, industry prices decreased such that Pratt was obligated to reduce its prices to Star Pizza.

12.

Pratt failed to honor the applicable price adjustments under the 2012 Agreement.

13.

In 2016, Pratt and Star Pizza negotiated a new agreement. They signed the Purchase Agreement, effective October 18, 2016.

14.

The Purchase Agreement set the terms by which Star Pizza would buy, and Pratt would sell, high volumes of pizza boxes.

15.

The base contract price was contingent on Star Pizza purchasing minimum volumes of pizza boxes from Pratt.

16.

The Purchase Agreement, like the 2012 Agreement, provided for a "Price

Adjustment" based on industry pricing.

17.

The Purchase Agreement also provided for certain rebates that Pratt was to pay Star Pizza.

18.

The Purchase Agreement also required Pratt to pay Star Pizza $160,000.00 to "catch up" on the unpaid price adjustments from the 2012 Agreement. Pratt was to pay the "catch-up" payment in full over a nine-month period ending June 30, 2017.

19.

Pratt paid only $53,607.00 of the "catch-up" payment.

20.

Pratt owes an additional $106,393.00 for the "catch-up" payment.

21.

Pratt failed to pay rebates based on invoices paid by Star Pizza from October 1, 2016 through March 13, 2017 under the 2016 Purchase Agreement. The total unpaid rebates through March 13, 2017 are $111,856.00.

22.

After signing the Purchase Agreement, Pratt repeatedly failed to timely meet Star Pizza's orders.

23.

Pratt claimed it could not meet Star Pizza's demands because Pratt suffered from mechanical failures.

24.

Upon information and belief, Pratt gave priority to orders from other companies that would generate Pratt higher profit margins.

25.

Pratt's repeated failures forced Star Pizza to secure alternative arrangements with other suppliers of pizza boxes.

26.

The Purchase Agreement provided that the Parties would review purchase volumes and discuss overall business conditions quarterly, so they could try to mutually agree to modify purchase volume requirements.

27.

Pratt never adjusted purchase volume requirements, despite its failures to meet Star Pizza's demands.

28.

Despite Pratt's failures, Star Pizza continued to use Pratt as its primary, go-to, supplier.

29.

Pratt now claims Star Pizza failed to meet required sales volumes. But Pratt, not Star Pizza, caused any such failure.

30.

Had Pratt been able to meet Star Pizza's needs, Star Pizza would have exceeded minimum purchasing volumes under the Purchase Agreement.

31.

Though the parties signed the Purchase Agreement, Plaintiff does not have a signed copy. Its former Chief Financial Officer, Charlie Kidd, stole Plaintiff's contracts, distributor files, engineering drawings, customer contracts, and artwork files.

32.

Pratt knew of Mr. Kidd's actions and promised Star Pizza it would never sell to

him because of his conduct.

33.

Pratt now sells to Mr. Kidd's new company Pizza Box Express.

34.

On October 6, 2017, Porter Pizza, through its Florida counsel, demanded that Pratt pay the $218,249.00 principal debt owed.

35.

Pratt has refused to pay the debt it owes to Porter Pizza.

36.

Porter Pizza has hired the undersigned law firm to represent it in this matter through trial and has agreed to pay the firm a reasonable fee.

37.

All conditions precedent to the bringing of this action have been met, or if they have not, such failure is excused, or is the fault of Defendant.

## COUNT I
### BREACH OF CONTRACT

38.

Plaintiff restates and incorporates by reference each of the preceding paragraphs

as if fully stated herein.

39.

Plaintiff complied with all of its obligations under the Purchase Agreement and did not breach the agreement.

40.

Defendant is in breach of the Purchase Agreement by failing to pay the "catch-up" payment and applicable rebates and discounts, and by failing to timely meet Porter Pizza's and its successor's purchase orders.

41.

To date, Plaintiff has been damaged by these breaches because it has been deprived monies Pratt owes under the 2016 Purchase Agreement, been forced to incur fees and costs to "cover" for Pratt's repeated failures to timely meet Plaintiff's purchase orders, and has incurred fees and costs associated with Pratt's refusal to pay what is owed under the Parties' contract.

42.

As a result of these breaches, Plaintiff has been damaged in an amount exceeding $218,249.00.

43.

As a result of Pratt's breaches, Porter Pizza is entitled to the full value of all sums owed under the Purchase Agreement, and all consequential, incidental, general, and other damages resulting from Pratt's breaches.

### COUNT II – ATTORNEY'S FEES AND EXPENSES OF LITIGATION UNDER O.C.G.A. § 13-6-11

44.

Plaintiff restates and incorporates by reference each of the preceding paragraphs as if fully stated herein.

45.

Pratt has acted in bad faith, been stubbornly litigious and caused Porter Pizza unnecessary trouble and expenses with respect to the matters raised in this Complaint.

46.

Pratt has also acted in bad faith by selling to Charlie Kidd's new company—a competitor of Porter Pizza's—despite knowing that Mr. Kidd is illegally using Porter Pizza's stolen confidential business information and trade secrets.

47.

Porter Pizza therefore requests that the Court order Pratt to pay all expenses

associated with this litigation, including attorney's fees and costs, under O.C.G.A. § 13-6-11.

## **DEMAND UNDER O.C.G.A. § 13-1-11**

48.

Notice is provided that, if Pratt fails to pay the principal and interest accrued on the sums it owes Porter Pizza within ten days from Pratt's receipt of this Complaint, Porter Pizza shall be entitled to collect reasonable attorney's fees pursuant to O.C.G.A. § 13-1-11.

## **DEMAND FOR JURY TRIAL**

49.

Porter Pizza demands a jury trial in this action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Porter Pizza prays for orders, relief, recovery and judgment against Defendant Pratt as follows:

(a) Plaintiff be awarded judgment against Defendant in the total amount of at least $218,249.00, plus all consequential, incidental, general, and other damages resulting from Pratt's breaches;

(b) Plaintiff be awarded actual attorney's fees and costs pursuant to 13-6-11;

(c) That all costs of this action be cast against Defendant;

(d) That Plaintiff be awarded both prejudgment and post-judgment interest; and

(e) That Plaintiff be awarded such additional damages, remedies, or relief as the Court may deem just and proper.

Respectfully submitted this 4th day of January, 2018.



/s/ Adam S. Rubenfield
David J. Hungeling
Georgia State Bar No. 378417
Adam S. Rubenfield
Georgia State Bar No.: 419033
Peachtree 25th, Suite 599
1718 Peachtree Street
Atlanta, Georgia 30309
TEL (404) 574-2466
FAX (404) 574-2467
david@hungelinglaw.com
adam@hungelinglaw.com
***Attorneys for Plaintiff***