IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| PORTER PIZZA BOX OF FLORIDA, INC., a Florida corporation, f/k/a STAR PIZZA BOX, | : : : : | |
| Plaintiff/Counterclaim Defendant, | : : : | |
| v. | : : | |
| PRATT CORRUGATED HOLDINGS, INC., a Delaware corporation, | : : : | CIVIL ACTION NO. 1:18-cv-063-AT |
| Defendant/Counterclaim Plaintiff, | : : : | |
| v. | : : | |
| HALDEN PORTER, | : : | |
| Counterclaim-Defendant. | : | |

## **ORDER**

On November 30, 2022, the parties in this breach of contract action filed Motions *in Limine* [Docs. 125, 126] seeking to limit or preclude the use of certain evidence during trial. The parties' Motions *in Limine* raised several critical substantive issues, including issues relating to the enforceability of the Supply and Purchase Agreement that is the subject this case [Doc. 10-1] and the meaning of several terms therein, thereby prompting the Court to review anew the parties' cross-Motions for Summary Judgment [Docs. 53, 60].

In that connection, the Court held a pretrial conference on December 14, 2022 [Doc. 141] and a follow-up telephone conference with counsel on December 16, 2022 [Doc. 143]. During the latter conference, the Court advised counsel of its concerns regarding Porter Pizza Box of Florida, Inc.'s ("Porter Pizza") standing (among other issues) and set a schedule for supplemental briefing on the standing issue originally raised in the Motion for Partial Summary Judgment filed by Pratt Corrugated Holdings, Inc. ("Pratt"). The Court also advised counsel for the parties on December 24, 2022 that it would forthwith issue a written ruling on the following issues: the  legal question of the enforceability of the Supply and Purchase Agreement between the parties; whether Porter Pizza breached the parties' Agreement as a matter of law when it temporarily assigned benefits of the Agreement  to a third party without prior notice to Pratt; and whether Porter Pizza lacked standing as a matter of law to assert a breach of contract claim against Pratt for failure to pay certain rebates.  [*See* Doc. 152.][1] Given the significance of the legal issues the Court was reconsidering and judicial economy and fairness concerns, the Court's December 24, 2022 Order also directed the parties to re-commence mediation in early January and re-scheduled the trial date to January 25, 2023.

This  case  is  now  before  the  Court  on  a  sua  sponte  and  limited reconsideration of the parties' cross-Motions for Summary Judgment. After having

---

[1]  On December 23, 2022, Porter Pizza filed an additional Motion to Dismiss Pratt Corrugated Holdings, Inc.'s Counterclaims for Discovery Violations and Alternative Motion to Exclude Testimony by Jeffrey Philliber and Untimely Produced Documents [Doc. 149], and expedited briefing ensued thereafter in connection with that motion. A separate order shall subsequently be issued regarding that pending motion, which was only fully briefed as of January 4, 2023.

heard and reviewed the parties' arguments relating to the enforceability of their Supply and Purchase Agreement, the alleged breaches of the Agreement, as well as the issue of Porter Pizza's standing, and after having reviewed the applicable law, the Court **GRANTS IN PART** Pratt's Motion for Partial Summary Judgment [Doc. 60] and **AFFIRMS ITS DENIAL** of Porter Pizza's Motion for Summary Judgment [Doc. 53].

## I.    Background[2]

On October 18, 2016, Porter Pizza and Pratt executed their Master Supply and Purchase Agreement. (Supply and Purchase Agreement, Doc. 10-1.) The Agreement includes two key provisions that were at issue in the parties' cross-Motions for Summary Judgment. The first key provision of the Agreement, Section 3, provides that "[Pratt] agrees to sell to [Porter Pizza], and Porter Pizza agrees to purchase from Pratt certain corrugated products in the annual sales volume of Products as set forth on Exhibit A." (*Id.* at 2.) Section 3 further explains that, in order to obtain certain pricing described in Section 4 of the Agreement, Porter Pizza must purchase $17,000,000 worth of products:

> In consideration of [Pratt]'s price protection afforded to [Porter Pizza], [Porter Pizza] shall purchase at least seventeen million dollars ($17,000,000) of its requirements of the Product from [Pratt] during the Term[3] in set quantities and amounts provided on Exhibit A hereto.

---

[2] The Court here provides only a limited summary of the facts relevant to this Reconsideration Order.

[3] The "Term" provision of the Agreement provides that:

Unless earlier terminated as provided herein, the initial term of this Agreement shall continue for a period of thirty-six (36) consecutive months commencing on the Effective Date (the "Initial Term"). This Agreement shall automatically renew for additional terms of twelve (12) months each (each a "Renewal Term"), unless

ln order to obtain the pricing as provided in Section 4 hereof, the quantities commitments on Exhibit A shall be met or exceeded. If [Porter Pizza] does not meet or exceed such quantities at any time, for any reason, the Parties shall mutually agree as to the pricing for such Products. The pricing herein is contingent upon a minimum annual purchase equivalent to seventeen million dollars ($17,000,000) or four million, two hundred fifty thousand dollars ($4,250,000 million) quarterly. Purchases will be reviewed quarterly between the Parties to discuss overall business conditions in relation to this Agreement. If [Porter Pizza] does not meet or exceed of [sic] the contingent quarterly minimum for two consecutive quarterly reviews at any time, for any reason, the Parties shall mutually agree to extend the review for another quarter or make a modification as outlined in Section 12.

(*Id.* at 2—3.)

In addition to price protection under the Agreement, Porter Pizza was entitled to certain rebates under the Agreement provided that certain conditions were met:

[Porter Pizza] shall be paid a rebate of one and one-and three quarters percent (1¾%) of the total net sales and will be accrued by [Pratt] up to a minimum rebate spend of total sales of seventeen million dollars ($17,000.000). Rebate will be paid twice a year based on the first six (6) months following the Effective Date, estimated to be on or before April 30 and October 31 of each Agreement year. [Porter Pizza] shall be paid an additional rebate of one and one-quarter percent (1¼%) of total net sales that exceed seventeen million dollars ($17,000,000) and will be paid on the same pay out schedule . . . Additionally, [Porter Pizza] will be paid a monthly rebate of four percent ( 4%,) of net sales on Products manufactured at and shipped from [Pratt]'s Conyers, Georgia facility and shipped to [Porter Pizza]'s facility in Conyers. Georgia.

(*Id.* at 4.)

---

prior written notice of intent not to renew is issued by either Party to the other at least sixty (60) days prior to the expiration of the Initial Term or any Renewal Term, as applicable. As used herein, the "Term" of this Agreement shall collectively mean the Initial Term and any subsequent Renewal Terms.

The second key provision of the Agreement, Section 11, is a non-assignment provision that prohibits Pratt and Porter Pizza from transferring their interest in the Agreement to a third party without prior written consent from the other. Specifically, it states that:

> [Pratt] may not assign or otherwise transfer its interests in this Agreement without [Porter Pizza]'s prior written consent, provided however, that [Pratt] may assign this Agreement to a subsidiary or affiliate without the prior written consent of [Porter Pizza]. [Porter Pizza] may not assign or otherwise transfer any of its interest in this Agreement without [Pratt]'s sixty (60) days advanced written notice to [Pratt] and [Pratt]'s written consent to the assignment.

(*Id.* at 5—6.)

Just three weeks after the Porter Pizza-Pratt Supply and Purchase Agreement was executed, on November 7, 2016, Porter Pizza signed a letter of intent from a third party, WestRock, in which WestRock indicated its intent to purchase Porter Pizza. (Pratt's Statement of Material Facts, Doc. 61 ¶ 37; Porter Parties' Response to Pratt's Statement of Material Facts, Doc. 72-2 ¶ 37.) And on March 13, 2017, approximately five months after the Porter Pizza-Pratt Supply and Purchase Agreement was executed, Porter Pizza executed a formal Asset Purchase Agreement ("APA") with WestRock. (Porter-WestRock APA, Doc. 66-6.)  Porter Pizza did not directly inform anyone at Pratt about the APA or his plans to execute the APA until the day the APA was executed. (Pratt's Statement of Material Facts, Doc. 61 ¶ 28; Porter Parties' Response to Pratt's Statement of Material Facts, Doc. 72-2 ¶ 28.)  And no evidence has been provided that Porter Pizza ever sent Pratt

the 60-day written notice required by Section 11 of the Supply and Purchase Agreement.

Also on March 13, 2017, Porter Pizza and WestRock entered into a "letter agreement," which made WestRock entitled to the rebates to which Porter Pizza had been entitled under the Pratt-Porter Pizza Supply and Purchase Agreement. The Letter Agreement provides:

> [WestRock] shall be entitled to all amounts paid/credited by Pratt with respect to the Outstanding Pratt Rebates[4] (and any additional rebates from Pratt) received from and after Closing, and any such amounts paid to any of the Seller Parties [i.e., Porter Parties] shall be forwarded to [WestRock] within three (3) Business Days of receipt.

> To the extent that after the Closing Date [WestRock] does not receive, by payment of cash or by credit against amounts owing to Pratt by [WestRock], the full amount of the Outstanding Pratt Rebates as of the Closing Date, then (i) if the Combined Final Net Working Capital has not been finally determined, the amount of the Pratt Rebates Shortfall (as defined below) shall be subtracted from the amount of the Outstanding Pratt Rebates in the calculation of the Combined Final Net Working Capital, and (ii) if the Combined Final Net Working Capital has already been finally determined, H. Porter or another [Porter] Party shall pay to Buyer the amount of the Pratt Rebates Shortfall within fifteen ( 15) Business Days of the date on which H. Porter receives written notice from [WestRock] of the amount of the Pratt Rebates Shortfall. Upon receipt by [WestRock] of payment in full for the Pratt Rebates Shortfall, if any, pursuant to (i) or (ii) of the preceding sentence, [WestRock] shall assign to H. Porter or his designee(s) any and all of [WestRock]'s rights to receive the Pratt Rebates Shortfall amount from Pratt. The recipient(s) of such Pratt Rebates Shortfall amounts shall have the right, in his, its, or their sole discretion and cost, to pursue such commercially reasonable collection efforts as he, it, or they deem appropriate to recover the balance of the Pratt Rebates Shortfall amounts. The Pratt Rebates

---

[4] The Outstanding Pratt Rebates include "the asset accounts 11494-00 (Pratt Rebate 1.75%) and 11496-00 (Pratt Rebate 3.6%) in the agreed upon amount of $222,371.00," which were to be included in the calculation of Net Working Capital of the [Porter Pizza] pursuant to the Porter-WestRock APA. (Porter-WestRock Closing Letter, Doc. 72-3 at 4.)

> Shortfall shall mean the difference between (i) the Outstanding Pratt Rebates and (ii) the amount of the Outstanding Pratt Rebates actually received by Buyer from Pratt in cash or as a credit against amounts owing to Pratt by Buyer.

(Porter-WestRock Closing Letter, Doc. 72-3 at 4—5.)[5]

Pratt subsequently received purchase orders for products, i.e., pizza boxes, bearing a combined WestRock/Star Pizza[6] logo and letterhead. (Pratt's Statement of Material Facts, Doc. 61 ¶ 34; Porter Parties' Response to Pratt's Statement of Material Facts, Doc. 72-2 ¶ 34.) Pratt set this entity up as a new customer, and eventually, Pratt either refused to supply WestRock with pizza boxes or WestRock stopped ordering pizza boxes. (*Id.* ¶ 35.)

On January 4, 2018, Porter Pizza initiated this litigation by suing Pratt for breach of contract based on Pratt's alleged failure to pay rebates in the amount of $111,856, failure to pay certain catch-up payments, and failure to timely meet Porter Pizza's purchase orders. (Compl, Doc. 1 ¶ 40.) On January 29, 2018, Pratt answered Porter Pizza's Complaint and countersued the Plaintiff as well as filed a motion to add Halden Porter as a Counterclaim Defendant. (Docs 4, 5.) On February 23, 2018, Pratt filed its First Amended Counterclaim (Doc. 10) in which the company alleged that Porter Pizza breached the parties' Supply and Purchase Agreement when it stopped ordering products from Pratt, failed to pay invoices

---

[5] Later, on August 22, 2019 *and after the commencement of this litigation*, WestRock and Porter Pizza signed a "Bill of Sale and *Assignment*" that "sold, *transferred, assigned*, conveyed and delivered . . . all of [WestRock]'s rights, title, interest and benefits, of whatever kind or nature, in and to the Pratt Rebates Shortfall" back to Porter Pizza. (Porter-WestRock 2019 Bill of Sale and Assignment, Doc. 72-3 at 2.)
[6] Star Pizza is the former name of Porter Pizza.

due to Pratt, sold its assets to WestRock, failed to perform conditions precedent to modification or termination of the agreement, and engaged in other actions in violation of its duties under law. Pratt also alleged that Porter Pizza and its owner Halden Porter committed fraud by making commitments under the Supply and Purchase Agreement that they did not intend to carry out or that they knew would become impossible to do.

On July 17, 2019, the Porter Pizza Parties (i.e., Porter Pizza and Mr. Porter) and Pratt moved for summary judgment. (*See* Docs. 53, 60.) In its Motion for Partial Summary Judgment, Pratt moved for summary judgment on several issues. First, Pratt argued that Porter Pizza breached the Supply and Purchase Agreement as a matter of law by (1) selling its assets to WestRock and placing itself in a position in which it could not perform; (2) transferring at least some of its interest in the Agreement to WestRock without giving Pratt 60 days' advanced written notice; and (3) failing to purchase the minimum number of pizza boxes required under the Agreement. Finally, Pratt sought dismissal of Porter Pizza's breach of contract claim, arguing that Porter Pizza did not have standing to pursue the claim because it sold its right to receive rebates under the Supply and Purchase Agreement to WestRock and its cause of action asserted in this lawsuit.

In their Motion for Summary Judgment, the Porter Pizza Parties sought dismissal of Pratt's fraud and breach of contract claims. With respect to the breach of contract claim, Porter Pizza argued that Pratt waived the claim related to the sale of Porter Pizza's assets to WestRock by failing to object to the sale and willingly

fulfilling orders for WestRock under the pricing terms of the Supply and Purchase Agreement. Additionally, Porter Pizza contended that, even if it failed to meet the $17,000,000 product purchasing goal under the Supply and Purchase Agreement, there is no related monetary penalty and Pratt therefore cannot retroactively recover discounts that accrued prior to the 2016 Agreement or discounts it provided pursuant to the Agreement. That is because, according to Porter Pizza, the parties agreed to confer and agree on future pricing if Porter Pizza failed to meet the purchasing goal.

On February 18, 2020, this Court denied the parties' cross-Motions for Summary Judgment. (Doc. 91.) The Court explained that the case was rife with factual disputes and therefore would proceed to trial on each remaining claim. However, after reviewing the Porter Parties' November 30, 2022 Motions *in Limine*, which included substantive legal arguments never before made in this case, including the argument that the Supply and Purchase Agreement did not legally require Porter Pizza to buy $17,000,000 worth of pizza boxes annually, as well as implicated issues raised in the original summary judgment briefing, the Court has found it necessary to consider anew certain aspects of its summary judgment ruling.

## II. Legal Standard

A federal court has the inherent authority to reconsider its own rulings prior to the entry of judgment. Fed. R. Civ. P. 54(b); *Flood v. Young Woman's Christian Ass'n of Brunswick, Georgia, Inc.*, 398 F.3d 1261, 1267 (11th Cir. 2005). Federal

Rule of Civil Procedure 54(b) authorizes a court to revise "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." In this case, the Court reconsiders its denial of Pratt's Motion for Partial Summary Judgment and Porter Pizza's Motion for Summary Judgment related to the breach of contract claim.

## III.  Discussion

The Court begins by addressing Pratt's summary judgment argument that Porter Pizza breached the Supply and Purchase Agreement as a matter of law by transferring at least some of its interest in the Agreement to WestRock without giving Pratt 60 days' advanced written notice. The Court also considers Porter Pizza's Motion *in Limine* argument that the Agreement did not require it to purchase a minimum number of pizza boxes annually.  While the Court considers issues surrounding the enforceability of contract provisions, it does not here consider Pratt's summary judgment argument that Porter Pizza breached the Supply and Purchase Agreement as a matter of law by selling its assets to WestRock and placing itself in a position in which it could not perform. The Court finally turns to the issue of Porter Pizza's standing to bring its claims in light of Pratt's contention that Porter Pizza transferred its interests in rebates under the Agreement to WestRock.

### A.    Breach of Contract

Pratt contends that Porter Pizza breached the Supply and Purchase Agreement as a matter of law. The elements of a breach of contract claim in Georgia are (1) a valid contract; (2) material breach of its terms; and (3) resultant damages to the party having the right to complain that the contract has been broken. *See TechBios, Inc. v. Champagne*, 688 S.E.2d 378, 381 (Ga. Ct. App. 2009); *TDS Healthcare Sys. Corp. v. Humana Hosp. Illinois, Inc.*, 880 F. Supp. 1572, 1583 (N.D. Ga. 1995). Here, Porter Pizza does not dispute that the Supply and Purchase Agreement is an enforceable contract in some respects, which is highlighted by the fact that it initiated this litigation by claiming that Pratt breached the Supply and Purchase Agreement. Nevertheless, Porter Pizza now argues that the Supply and Purchase Agreement is not legally enforceable in other ways. Porter Pizza also argues that even if the Supply and Purchase Agreement were deemed valid and enforceable, it did not breach the contract in the ways that Pratt has alleged.

### 1.    The Assignment Provision

With respect to the assignment provision, Porter Pizza does not dispute that the Supply and Purchase Agreement required that it "not assign or otherwise transfer *any* of its interest in th[e] Agreement" without giving Pratt 60-days' advanced written notice. (Supply and Purchase Agreement, Doc. 10-1 at 6 (*emphasis added*.)) However, Porter Pizza contends that it did not breach the assignment provision, and even if it did, Pratt is not harmed by its breach. The

Court here addresses only whether Porter Pizza breached the assignment provision.

Under Georgia law, an assignment is "an 'absolute, unconditional, and completed transfer' of rights, in whole or in part, under a contract so that, with respect to rights transferred, the assignor no longer has any right to performance from the opposite party and the assignee acquires that right to performance." Larkins, Ga. Contracts Law and Litigation § 2:13; *see Bank of Cave Spring v. Gold Kist, Inc.*, 327 S.E.2d 800, 802 (Ga. Ct. App. 1985) ("[T]o effect a legal assignment, there must be evidence of intent to assign or transfer the whole or part of a specific thing, debt, or chose in action, and the subject matter should be sufficiently described to make it capable of being identified.") (quoting 6 *Am. Jur. 2d* 185). "Except as otherwise provided by statute, an assignment of a right to payment expected to arise out of [an] existing . . . or continuing business relationship is effective in the same way as an assignment of an existing right." *Bank of Cave Spring*, 327 S.E.2d at 802—03 (quoting *Restatement of Contracts, 2nd,* § 321(1)); *see also Patrick Malloy Communities, LLC v. Cmty. & S. Bank*, 778 S.E.2d 242, 245 (Ga. Ct. App. 2015) ("A party may assign to another a contractual right to collect payment, including the right to sue to enforce the right, and the assignment must be in writing in order for the contractual right to be enforceable by the assignee.").

Here, Porter Pizza and WestRock agreed that, pursuant to the APA, WestRock became "entitled to all amounts paid/credited by Pratt with respect to

the Outstanding Pratt Rebates (and any additional rebates from Pratt) received from and after Closing" and that "any such amounts paid to any of the Seller Parties [i.e., Porter Parties] shall be forwarded to [WestRock] within three (3) Business Days of receipt." (Porter-WestRock Closing Letter, Doc. 72-3 at 4—5.) This agreement constitutes an assignment of the right to collect payment. Indeed, in August 2019, WestRock and Porter Pizza signed a "Bill of Sale and *Assignment*" that "sold, *transferred*, *assigned*, conveyed and delivered . . . all of [WestRock]'s rights, title, interest and benefits, of whatever kind or nature, in and to the Pratt Rebates Shortfall" back to Porter Pizza, which confirms that the first transfer of the rebate rights constituted an assignment. (Porter-WestRock 2019 Bill of Sale and Assignment, Doc. 72-3 at 2.)

The Supply and Purchase Agreement required that Porter Pizza "not assign or otherwise transfer *any* of its interest in th[e] Agreement" without giving Pratt 60-days' advanced written notice. (Pratt-Porter Pizza Supply-Purchase Agreement, Doc. 10-1 at 6 (*emphasis added.*)) "Any" may be defined as "one of many" or "one out of several." *Wheeler v. Rebel Truck Rental, Inc.*, 188 S.E.2d 155, 157 (Ga. Ct. App. 1972); *Chamblee v. Guy*, 126 S.E.2d 205, 206 (Ga. 1962). By assigning its right to rebates from Pratt under the Agreement to WestRock without any written notice to Pratt, Porter Pizza assigned one of many of its interest in the Agreement to WestRock without prior written notice, thereby violating the express terms of its contract with Pratt as a matter of law. The Court therefore **GRANTS** summary judgment on Pratt's claim that Porter Pizza breached the Supply and

Purchase Agreement as a matter of law by transferring at least some of its interest in the Agreement to WestRock without giving Pratt 60 days' advanced written notice.

### 2. The $17,000,000 Provision

With respect to the $17,000,000 provision, Porter Pizza argues that the Supply and Purchase Agreement constitutes an "invitation for orders" rather than a valid agreement. Relying on *Integrated Micro Systems, Inc. v. NEC Home Electronics (USA), Inc*, Porter Pizza contends that the Agreement contained no "minimum annual purchase" requirements and did not require that Porter Pizza buy any pizza boxes from Pratt. 329 S.E.2d 554 (Ga. Ct. App. 1985).

However, *Integrated Micro Systems, Inc.* ("*IMS*") is distinguishable from the case before the Court. In that case, the Georgia Court of Appeals considered whether an agreement between a computer reseller and a computer dealer constituted a valid requirements contract. The Court explained that "[a] requirements contract obligates the buyer . . . to purchase *all* the goods that the buyer will need for a particular use contemplated by the parties." *Id.* at 556 (emphasis added). And, "[i]n the absence of such an obligation, there is no requirements contract and 'the promise of the seller becomes merely an invitation for orders and a contract is not consummated until an order for a specific amount is made by the buyer.'" *Id.*[7] Because the agreement between the computer reseller

---

[7] *See also Hill & Mac Gunworks, LLC v. True Position, Inc.*, No. 1:20-CV-02447-SDG, 2022 WL 903197, at *11 (N.D. Ga. Mar. 28, 2022) ("Requirements agreements and output agreements

and dealer did not "ostensibly or implicitly" include a quantity of computers to be purchased by the reseller and because there was nothing in the contract that obligated the computer reseller to purchase any computers from the computer dealer, the Georgia court held that the parties' agreement was a mere invitation for orders and not a binding requirements contract.

Here, the Supply and Purchase Agreement was not intended to be a requirements contract in that it did not require Porter Pizza to purchase all of its pizza boxes from Pratt. Instead, it expressly required that Porter Pizza purchase a specific number of pizza boxes from Pratt. The Agreement stated, "[Porter Pizza] *shall* purchase at least seventeen million dollars ($17,000,000) of its requirements of the Product from [Pratt] during the Term in set quantities and amounts provided on Exhibit A hereto." (Pratt-Porter Pizza Supply-Purchase Agreement, Doc. 10-1 at 2.) Exhibit A lists the types of boxes and quantities of boxes to be purchased by Porter Pizza and at what price. (*See id.* at 8—20.) The Agreement also provided that, if Porter Pizza could "not meet or exceed such quantities at any time, for any reason," Porter Pizza and Pratt were required to "mutually agree as to the pricing for such Products." (*Id.* at 2.)

Georgia law provides that when construing a contract, a trial court first decides "whether the language is clear and unambiguous." *Woody's Steaks, LLC v.*

---

'measure[ ] the quantity by the output of the seller or the requirements of the buyer ... as may occur in good faith, except that no quantity unreasonably disproportionate to any stated estimate ... or otherwise comparable prior output or requirements may be tendered or demanded.' O.C.G.A. § 11-2-306(1).").

*Pastoria*, 584 S.E.2d 41, 43 (Ga. Ct. App. 2003) (citations omitted). "[I]f no ambiguity appears, the trial court enforces the contract according to its terms irrespective of all technical or arbitrary rules of construction." *Gill v. B & R Int'l, Inc.*, 507 S.E.2d 477, 480 (Ga. Ct. App. 1998). "A contract will not be held unenforceable for indefiniteness because its performance is, as to particular details, left open to subsequent agreement of the parties." *Advance Sec., Inc. v. Superior Surgical Mfg. Co.*, 399 S.E.2d 488, 490 (Ga. Ct. App. 1990).[8]

The Supply and Purchase Agreement in this case clearly stated that Porter Pizza "shall" or is required to purchase a specific number of pizza boxes from Pratt. *Shall*, per Black's Law Dictionary (11th ed. 2019), means the party "[h]as a duty to" or "more broadly, is required to." And if Porter Pizza could "not meet or exceed such quantities at any time, for any reason," Porter Pizza and Pratt were required to "mutually agree as to the pricing for such Products." (Pratt-Porter Pizza Supply-Purchase Agreement, Doc. 10-1 at 2.) This provision was more than a mere invitation for orders and constitutes an enforceable provision in the agreement. The issues of whether Porter Pizza breached this provision and what damage Pratt sustained as a result of any breach is an issue for trial. Additionally, the Court will

---

[8] Larkins, Ga. Contracts: Law and Litigation, § 3:2 ("An agreement to reach an agreement is no contract at all and imposes no obligation on the parties. This is so even though the parties' negotiation 'evidenced a complete willingness, or even an announced determination, to agree in the future upon such issues as might subsequently arise.' *Distinguishable, however, are situations where the parties leave certain details of performance to future determination, or agree upon a mechanism to settle an issue in the future.")* (internal citations omitted and emphasis provided.)

consider whether any other legal defenses must be considered in conjunction with the question of the breach and damages at the time of the trial or beforehand.

**B.    Standing**

Having found that Pratt and Porter Pizza consummated an enforceable contract and that Porter Pizza breached at least one provision of the contract as a matter of law when it assigned its right to rebates thereunder to a third party without providing requisite prior notice to Pratt, the Court now turns to the issue of Porter Pizza's standing. In its Motion for Partial Summary Judgment, Pratt argued that Porter Pizza sold its breach of contract claim to WestRock and therefore did not have standing to pursue that claim when it initiated this lawsuit alleging that Pratt failed to pay rebates in the amount of $111,856, failed to pay certain catch-up payments, and failed to timely meet Porter Pizza's purchase orders. The Court here addresses whether Porter Pizza had standing to pursue its breach of contract claim and whether it can cure any standing deficiency with respect only to its rebates claim.[9]

Under Georgia law, "[e]very action shall be prosecuted in the name of the real party in interest." O.C.G.A. § 9–11–17(a). As explained in detail above, Porter Pizza assigned its right to receive rebates under the Supply and Purchase Agreement to WestRock on March 13, 2017. Porter Pizza then initiated this

---

[9] Because Porter Pizza has not briefed the question of its standing with respect to asserting its claim for the catch-up payments referenced in the Supply and Purchase Agreement and Porter Pizza's Complaint (Doc. 1 ¶ 18—20), the Court here does not address Porter Pizza's standing in connection with the breach of contract claim based on Pratt's alleged failure to pay the catch-up payment in full. The Court, if necessary, will take up this issue after the mediation in this case.

litigation on January 4, 2018 seeking full payment of the rebates. Over a year and a half later and after the filing of summary judgment motions in this case, on August 22, 2019, WestRock and Porter Pizza signed a "Bill of Sale and Assignment" that "sold, transferred, assigned, conveyed and delivered . . . all of [WestRock]'s rights, title, interest and benefits, of whatever kind or nature, in and to the Pratt Rebates Shortfall" back to Porter Pizza. (Porter-WestRock 2019 Bill of Sale and Assignment, Doc. 72-3 at 2.) Given this timeline of events, Pratt contends that Porter Pizza did not have standing to initiate this litigation because it had assigned its right to receive the rebates to WestRock as of the time this suit was filed and therefore under Georgia law is precluded from asserting that it has standing to raise the rebate claim in this litigation.

Porter Pizza in contrast argues that it did have standing when it initiated this litigation because under the Porter-WestRock Asset Purchase Agreement ("APA"), the right to collect rebates under the Supply and Purchase Agreement automatically transferred back to Porter Pizza if (1) Pratt did not pay or credit WestRock for the rebates and (2) Porter Pizza was consequently required to credit WestRock the remaining rebate amount. Because Pratt ultimately did not pay the remaining rebate amount and Porter Pizza credited WestRock the amount on August 19, 2017, Porter Pizza maintains that it had standing to pursue this lawsuit as of August 19, 2017.

Contrary to Porter Pizza's position, the Porter-WestRock APA did not provide for an automatic reversion of the rebate right to Porter Pizza. Instead, it

required that WestRock take affirmative action to assign the right to the rebates back to Porter Pizza if Pratt did not pay or credit WestRock for them, as explained below:

> **To the extent that after the Closing Date [WestRock] does not receive, by payment of cash or by credit against amounts owing to Pratt by [WestRock], the full amount of the Outstanding Pratt Rebates as of the Closing Date**, then (i) if the Combined Final Net Working Capital has not been finally determined, the amount of the Pratt Rebates Shortfall (as defined below) shall be subtracted from the amount of the Outstanding Pratt Rebates in the calculation of the Combined Final Net Working Capital, and (ii) if the Combined Final Net Working Capital has already been finally determined, H. Porter or another [Porter] Party shall pay to Buyer the amount of the Pratt Rebates Shortfall within fifteen ( 15) Business Days of the date on which H. Porter receives written notice from [WestRock] of the amount of the Pratt Rebates Shortfall. Upon receipt by [WestRock] of payment in full for the Pratt Rebates Shortfall, if any, pursuant to (i) or (ii) of the preceding sentence, **<u>[WestRock] shall assign</u> to H. Porter or his designee(s) any and all of [WestRock]'s rights to receive the Pratt Rebates Shortfall amount from Pratt.[10] The recipient(s) of such Pratt Rebates Shortfall amounts shall have the right, in his, its, or their sole discretion and cost, to pursue such commercially reasonable collection efforts as he, it, or they deem appropriate to recover the balance of the Pratt Rebates Shortfall amounts.**

(Porter-WestRock Closing Letter, Doc. 72-3 at 4—5 (emphasis added.)) WestRock did not take affirmative action to legally assign the right to the rebates back to Porter Pizza until August 22, 2019, over a year and half after this lawsuit was

---

[10] "Shall" means *inter alia* "has a duty to," "is required to," "should," or will in the future. *Shall*, Black's Law Dictionary (11th ed. 2019) ("**1.** Has a duty to; more broadly, is required to <the requester shall send notice> <notice shall be sent>. • This is the mandatory sense that drafters typically intend and that courts typically uphold. **2.** Should (as often interpreted by courts) <all claimants shall request mediation> . . . **4.** Will (as a future-tense verb).").

initiated. Therefore, Porter Pizza did not have standing to sue Pratt for its failure to pay the rebates in full when it initiated this action.

The Court now considers whether WestRock's August 22, 2019 assignment cures Porter Pizza's standing deficiency, as the Bill of Sale and Assignment has a retroactive effective date of August 29, 2017. "Although Georgia law allows contracts to have retroactive effect between the parties to the contract, the retroactive date is not effective against third parties to the agreement." *Minnifield v. Johnson & Freedman, LLC*, 448 F. App'x 914, 916 (11th Cir. 2011); *Outdoor Sys., Inc. v. Wood*, 543 S.E.2d 414, 417 (Ga. Ct. App. 2000) ("We find no case law to support the proposition that the retroactive date is effective against third parties to the agreement. And, such a rule would lead to anomalous results in this case."). The retroactive effective date in the Porter-WestRock Bill of Sale and Assignment is therefore not enforceable against Pratt as a third party to the agreement. *See Outdoor Sys.*, 543 S.E.2d at 417 (finding that a party had no standing to sue for a trespass pursuant to an assignment of the trespass claim with a retroactive effective date). None of the cases on which Porter Pizza relies change this Court's analysis, as those cases involve assignments executed prior to the filing of the

subject complaints.[11],[12] Therefore, the Court **GRANTS** summary judgment with respect to Pratt's argument that Porter Pizza lacks standing to pursue its claim that Pratt breached the Supply and Purchase Agreement by failing to pay Porter Pizza certain rebates in full.

## IV.    Conclusion

For the aforementioned reasons, the Court **GRANTS IN PART** Pratt's Motion for Partial Summary Judgment [Doc. 60] and **AFFIRMS ITS DENIAL** of Porter Pizza's Motion for Summary Judgment [Doc. 53].

**IT IS SO ORDERED** this 6th day of January, 2023.

**Honorable Amy Totenberg**
**United States District Judge**

---

[11] *See MSP Recovery Claims, Series LLC v. QBE Holdings, Inc.*, 965 F.3d 1210, 1219 (11th Cir. 2020) ("In order for an assignment with a retroactive effective date to be valid for standing purposes, the assignee must possess the assigned right 'on the day it filed the complaint.' This requirement cannot 'be met retroactively.' However, 'a nunc pro tunc assignment filed before the filing date of the action with an effective assignment date before the action does effect a valid transfer of rights sufficient to confer standing.' The Nunc Pro Tunc Assignment, which purports to assign HFHP's claims under the Act retroactive to April 28, 2016, was executed on June 1, 2018. This suit was filed on September 6, 2018. It seems obvious, then, that the Nunc Pro Tunc Assignment created a valid assignment of claims in this action.") (emphasis in original) (internal citations omitted); *Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96, 99 (11th Cir. 1995) (the assignment agreement "had been completed and signed when the present lawsuit was filed").

[12] The fact that Porter Pizza and WestRock intended to execute this re-assignment earlier also does not change this Court's analysis.

21